EASTERN DIST.
*January*, 1836.

SHACKLEFORD
*vs.*
WILCOX ET AL.

## SHACKLEFORD *VS.* WILCOX ET AL.

### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

As a general rule, the carrier is bound to prove the casualty or *vis major* which occasioned the loss or deterioration of the property which he undertakes to convey and deliver in good condition, according to the bill of lading.

When damaged goods are delivered and received by the consignee, without objection, particularly where the damage is apparent upon simple inspection, a rigid enforcement of the rule requiring the carrier to prove the damage was occasioned by *vis major*, might operate with injustice. There is an apparent compliance on his part with the conditions of the bill of lading, and by receiving the goods the consignees become liable for the freight.

The owner or master of a vessel is not liable for damages done to deck freight, arising from the dangers and waves of the sea, and the necessary exposure of the property on deck, stowed there by the consent of the shipper.

In relation to underwriters without special agreement, and other owners of the cargo under deck, and in cases of jettison, it is well settled that goods stowed on deck form no part of the cargo.

As between the owner of the goods and the carrier, the latter is bound by the same obligation to carry the deck freight as the rest of the cargo, save only the damages which result from its exposed situation.

This is an action by the master of the brig Good Return, to recover from the defendants and consignees, the sum of two hundred and forty-one dollars and sixty-two cents, the amount of freight on a cargo of cotton, shipped at the port of St. Marks, on board of said brig, and consigned to Wilcox & Fearn, in New-Orleans.

The bill of lading expressed that one hundred and ninety-seven bales of cotton were shipped in good order, on board the plaintiff's vessel, the 15th December, 1832, at St. Marks, in Florida, consigned to the defendants, they paying freight. The bales were all marked and numbered as stated in the margin of the bill of lading. It further specified that one hundred and nineteen bales were stowed under deck at one dollar and thirty-seven and a half cents per bale, and seventy-eight on deck at one dollar per bale, each being designated. The defendants received the cotton without objection. On a demand made for the freight they refused payment, on the ground that some of the cotton was wet and damaged while on board the vessel.

In their answer, the defendants admit the receipt of the cotton and refusal to pay the freight. They aver that the cotton was shipped in good order and that twenty-three bales were damaged through the negligence and fault of the master of the vessel, and for which he is liable. They claim five hundred and ninety-five dollars in reconvention for the damages sustained.

Duffy, a witness and clerk to the agent of the plaintiff, says he called on the defendants for the freight after the cotton had been received by them. That they refused payment, stating a bale was missing and that several were much damaged; and that the defendant, Wilcox, admitted that the cotton damaged formed part of the deck load.

This with the bill of lading comprised the plaintiff's testimony. The bill showed by the marks, the bales that were *under* deck and those *on deck*.

Collins, a clerk and witness for the defendant, says he attended to the receiving a portion of the cotton. Saw several of the bales which were much damaged by salt water. Several of the hands were in the hold patching a bale which appeared in bad order. After the whole of the cotton was landed, witness had charge of it and sent twenty-three bales which were badly damaged by salt water, to be picked and re-packed, &c. He saw some of the damaged bales while they were on the stage of the vessel, and notified the officers on board of the damage. The crew stated the cotton damaged *was the deck load*. The cotton appeared to be saturated with salt water. He does not know in what part of the vessel the twenty-three damaged bales were stowed.

Other witnesses testified in substance as stated in the above. The defendants proved a loss on the damaged cotton, including expenses of picking and re-packing of three hundred and eighty-one dollars, which left one hundred and thirty-nine dollars, due the defendants, on their reconventional demand after deducting freight.

Duffy, a witness for plaintiff, being recalled, says that Mr. Wilcox stated to him that the owners and master of the brig were liable for the damage done the deck freight, and that he did not claim for any other.

This cause was first tried before the judge of the Criminal Court (Grima) acting as judge *ad interim* of the First District Court, in June, 1833. The court was of opinion, that as the bill of lading expressed the cotton to be shipped in good order, the plaintiff was responsible for the damage, as having been caused by his neglect, unless he made proof of the cause of the deterioration and that it happened without his fault. Judgment was rendered in favor of the defendants for their reconventional demand, after deducting the amount claimed for freight.

The counsel for the plaintiff moved for a new trial on the ground that the judgment was unsupported by the law or evidence of the case.

The rule for a new trial stood over until March, 1835. At this term, his honor judge *Watts* allowed the new trial and heard the case on its merits, on the testimony taken on the first trial. Judgment was given for the plaintiff for the amount of freight claimed, after deducting thirty-five dollars for one bale of cotton missing, rejecting the reconventional demand. The defendants appealed.

This case was argued at the June term, 1835, of this court, by *Mr. Curry,* for the plaintiff and by *Mr. Conrad,* for the defendants. A re-argument was had at January term, 1836.

*Curry and Eustis,* for the plaintiff.

1. This is an action by the master of the brig Good Return, to recover the freight on one hundred and nineteen bales of cotton, shipped *under deck* at one dollar thirty-seven and a half cents per bale, and seventy-nine *on deck,* at one dollar per bale, from the port of St. Marks, in Florida, to New-Orleans. The defendants are the consignees, received the cotton without objection, and resist payment on the ground that part of it was damaged.

2. The testimony shows that one of the defendants admitted the damaged cotton made part of the *deck* freight. Having received the cotton, the bill of lading specified that which was on deck and that under deck. He could easily ascertain the part of the cargo that was damaged, whether above or under deck.

3. Owners or masters of vessels are not liable for the damage or loss of the deck freight, when it is stowed there with the consent of the shipper or owner. *Dorsey et al.* vs. *Smith et al.,* 4 *Louisiana Reports,* 211.

4. Deck freight makes no part of the cargo; and a jettison of goods stowed on deck cannot be brought into a general average. *Abbott on Shipping,* 354. 3 *Johnson's Cases,* 178.

5. An insurance does not reach goods on deck, unless expressly mentioned. They are not considered part of the cargo. The owners of the cargo under cover ought not therefore to contribute to the jettison of the goods on deck. 3 *Johnson's Cases*, 178.

6. The defendants having received the cotton without first objecting to paying freight on account of the damaged cotton, were bound to show that the damage was occasioned by the fault and negligence of the plaintiff. This they have not done.

7. The bill of lading specified each bale *on deck*, and each bale *under deck*, so that the defendants had it in their power to ascertain precisely what part of the cargo was damaged, on simple inspection, and were bound to show that it was the *under deck* freight that was wet and damaged in order to make the plaintiff liable.

*Conrad*, for the defendants.

1. By the provisions of law regulating the duties and responsibility of common carriers, the plaintiff was bound to make good all damage except such as resulted from accidents, proven to have been inevitable by any degree of human foresight. *Louisiana Code, articles* 2725, 3522, *No.* 7. *Abbott on Shipping, page* 277. *Kent's Commentaries,* 597 to 609. *Story on Bailments,* 517, 518, 578. The burden of proving the inevitable accident which excuses his non-fulfilment of his contract lies on him. " *La responsibilité du capitaine ne cesse que par la preuve d'obstacles de force majeure*" says *Boulay-Paty, Droit Com. vol.* 1, *page* 405: " Il n'y a que le cas fortuit que puisse l'excuser ; c'est à lui à prouver le cas fortuit." 1 *Valin, vol.* 1, *page* 394. " Il doit rendre la marchandise telle qu'il l'a reçue à moins que le dommage ne procède d'un accident qu'on n'a pu ni prevoir ni empêcher. 1 *Emérigon*, 377. These principles have been adopted to their fullest extent by this court. 11 *Martin,* 579. 1 *Louisiana Reports,* 349.

2. The circumstance of the cotton being shipped on deck, did not exonerate him from this responsibility. He is still bound to prove *the cause of the damage,* and that it was

EASTERN DIST.
January 1836.

SHACKLEFORD
vs.
WILCOX ET AL.

inevitable, with this difference only, that as the cotton was *by permission of the shipper*, shipped on deck, he is not responsible for damage which necessarily resulted from that mode of shipping; and the only question was, one of fact, whether the shipper had consented to the goods being so shipped or not.

3. At any rate, by the bill of lading in this case (which is the contract between the parties) the master undertakes to deliver it in good order. No distinction is made as to the measure of his responsibility, between the cotton shipped on, and that shipped under deck.

*Bullard, J.,* delivered the opinion of the court.

This is an action by the master of the brig Good Return, to recover the freight of a number of bales of cotton, from St. Marks to New-Orleans, and which were delivered to the defendants as consignees. The bill of lading shows that seventy-eight bales were put on deck, with the consent of the shipper, at a lower rate of freight than those which were shipped in the hold.

The answer admits that the cotton was transported on board the brig and consigned to them, but they aver that it was put on board in good condition, and that by the fault and negligence of the plaintiff or others on board, it was delivered to them not in good condition, but on the contrary, in a damaged and unsaleable state, and they estimate the damage at five hundred and ninety-five dollars, for which sum they pray judgment against the plaintiff in reconvention.

Judgment being rendered in favor of the plaintiff for the amount of the freight, the defendants appealed.

The evidence shows, that the cotton on its arrival in New-Orleans was received without objection by the consignees, but that twenty-three bales were much wet with salt water. It was admitted by one of the defendants, that the damaged bales formed a part of the deck load. We are satisfied from all the circumstances of the case, particularly the nature and limited extent of the damage, that such was the fact; and

As a general rule, the carrier is bound to prove the casualty or *vis major*, which occasioned the loss or deterioration of the property, which he undertakes to convey and deliver in good condition, according to the bill of lading.

When damaged goods are delivered and received by the consignee without objection, particularly where the damage is apparent upon simple inspection, a rigid enforcement of the rule requiring the carrier to prove the damages occasioned by *vis major*,

EASTERN DIST.
January, 1836.

SHACKLEFORD
vs.
WILCOX ET AL.

the only question is, whether such damage arose from accidents against which the shipper was his own insurer, by consenting that the cotton should be conveyed on deck.

Neither party has furnished us any direct and positive evidence as to the cause of the damage. As a general rule, it is undoubtedly true that the carrier is bound to prove the casualty, or *vis major*, which occasioned the loss or deterioration of the property which he undertook to convey, and to deliver in good condition, according to the terms of the bill of lading. But when the goods have been delivered and received without objection, particularly where the damage was apparent upon simple inspection, a rigid enforcement of the rule might operate a great injustice. There is an apparent compliance on the part of the carrier, with the conditions of the bill of lading; and by receiving the goods, the consignees became liable for the freight. *Abbott on Shipping*, 299.

The defendants in their reconventional demand, expressly aver that the damage was occasioned by the fault or negligence of the captain or his crew. In the absence of any positive evidence on that point, we are left altogether to the guidance of presumptions arising from the nature and extent of the damage done, and the necessary exposure of the property on deck, with the consent of the shipper. We have already said that we assume as a fact, that the damaged cotton formed a part of the deck load. The voyage was in the winter, from the port of St. Marks to New-Orleans, by the way of the Balize, and the damage such as would naturally arise from exposure to spray in the open sea. In the absence of all proof to the contrary, the presumption arising from these facts, that the damage was occasioned by dangers of the sea, for which the master is not liable, must stand. In relation to underwriters without special agreement, and in relation to other owners of the cargo under deck, in cases of jettison, it is well settled that goods stowed on deck form no part of the cargo. As between the owner and the carrier, it is otherwise, and the carrier is bound by the same obligation, as for the rest of the cargo, save only the damage which may

might operate injustice. There is an apparent compliance on his part, with the conditions of the bill of lading; and by receiving the goods, the consignees became liable for the freight.

The owner or master of a vessel, is not liable for damage done to deck freight, arising from the dangers and waves of the sea, and the necessary exposure of the property on deck, stowed there by the consent of the shipper.

In relation to underwriters without special agreement, and other owners of the cargo under deck, in cases of jettison, it is well settled that goods stowed on deck form no part of the cargo.

As between the owner of the goods and the carrier, the latter is bound by the same obligation to carry the deck freight as the rest of the cargo, save only the damages which result from its exposed situation.

result from its exposed situation. In the present case, we think he has shown sufficient, under all the circumstances, to exonerate himself from liability.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.