Ilsley, J.
This is a suit to recover the value of fifty-seven bales of .cotton, received for transportation at Osyka, Miss., on the 18th August, 1855, consigned to Cutrer and Harrison, at New Orleans, insured by the plaintiffs, destroyed by fire about nine miles above New Orleans, and paid for by the plaintiffs, in consequence of the insurance undertaken by them.
The plaintiffs insured the cotton for the consignees, at $160 per bale, paid them the full amount insured, and claim to be subrogated to their rights and claims against the railroad company.
*303 The bill of lading acknowledges the receipt of the cotton “in good order and •well-conditioned,” but it does not insure against risk by fire, which is thereby expressly excluded; and in order to fix liability for the loss upon the defendant, the plaintiffs charge the railroad company with “press fault, negligence and mismanagement.”
From a judgment in the lower court in favor of the defendant, the plaintiff has appealed. ;
The American authorities maintain the right of the common carrier to restrict his liability by special contract. Angelí on Carriers, 220, sec. 59, and notes; 6 How. 382; and this Court recognizes the same doctrine in Roberts v. Riley, 15 A. 103.
But the carrier, notwithstanding a special agreement, is liable for losses and injuries occasioned not only by gross but by ordinary negligence; or in other words, the carrier is bound to ordinary diligence. Thomas v. Ship Morning Glory, etc., 13 A. 269. 16 How. 474; 31 Maine Rep. 223.
The plaintiff, having proved the loss of the cotton, it devolved on the defendant to show that it was occasioned by one of the exceptional perils, and this being established, the burden of proof was on the shipper to prove that the carrier was guilty of negligence, and might with due care have prevented the loss. 10 A. 413. 13 A. 270.
The plaintiff attributes the destruction of the cotton to the fault and negligence of the railroad company and its employ és — in this, that it did not provide a suitable and sufficient vehicle to transport the cotton, the one furnished for that purpose being an open flat, by no means adapted to that kind of freight. Cotton being, as he says, one of the most inflammable materials in nature, and exposed to kindle from sparks; that no means were at hand when the cotton was burnt to prevent or arrest the fire. No buckets, with water in them or empty; not a drop of water for that purpose; no watchman on the train; and that no attempt was made to throw off the burning bales to save the rest. This is the plaintiff’s case.
The defendant shows contrarily: that to the knowledge of the shipper, the company was in the habit of carrying, cotton on fiats; probably, because it is safer for the whole train than any other; that the shipper was present when the cotton was shipped on the flat; that there were buckets on the train, but that it was impossible on a road so rough, as the defendant’s was, to carry water in them.
The nearest water to the spot where the fire occurred, was half ' á mile off — unless water had been taken from the tank, which supplied the engine — that being the only tank which is used on railroad trains. ' If water could have been spared from that, which is not shown, it was at -a distance of 300 feet from the burning car, and could not have - been used effectually to arrest the flames, which made rapid progress, as everything was “ so dry, with a strong wind blowing. ”
The employés attempted to smother the flames with branches, but ineffectually; and all they could do was to separate the train, by which means they prevented the fire from communicating-to any other part of it. ■
The bagging was worn and torn off at the ends, as is proved in the record, although ip the bill of lading it was inserted. being in good *304 order and condition. This exposed it to ignition from sparks or otherwise. In the case of Oakey & Hawkins v. Gordon, 7 A. 235, one of an excepted risk by fire, and the destruction of cotton on a railroad, ignited, by sparks from a locomotive, it was held that the proprietors of the railroad were,not liable for such a loss.. “The transportation,” said the Court, “partly by steamer and partly by railway, was within the usages of trade. It is reasonable to believe it was in contemplation ,of the parties, and it might be inferred from the evidence that the greater risk of fire on the' railway was the cause of the exception in the bill of lading;” and if the loss happened through the negligence of the owner] in shipping his cottofi'so as to expose it to loss from fire, he could not recover, even if the, carrier was to ' blame.' Redfield on Railways, 26?. Angelí on Carriers, page 57.
■‘This, and ' the , shipper’s implied acquiescence, in the mode used to transport his cotton, brings his case within the principle recognized in 4 La. 211; 9 La. 33; and 2 A. 587, against which'the authority cited from 16 A.'223] does not militate; as in that'case, the owner of the cattle did. all he could to fender the only'means of transportation at the moment available, a safe one; and lost the 'cattle shipped by hind by the wilful obstin'ancy, fault and carelessness of the carrier, who acted, not in accordance'with, but'Contrary 'to, tile wishes of tlie shipper.
Although the' defendant, notwithstanding the special agreement, excluding risk froffi'fire,' was bound for ordinary negligence, he may well invoke’ the maxim' lex neminem cogü ad'vana sen impossibilia.. If no water cóüld be procured, it was unimportant what number of buckets on that occasion were on the cars, or what was the condition of those' on board. The only means at hand was to" smother the fiámes, which was attempted, bpt ineffectually.
¿The bales of .cotton¡burning on the flat were not thrown off it, because oydug. to,;the,r,apidprogress of the fire, it could not be done, as the evidence.proves,.......
Thq mornenj; was 9- critical,-one, and the attention.of every one was naturally; directed,tq the, cars jn, the .front and rear,of the burning ,car, to sever tfie train so as to prevent the fire communicating either way, was the first consideration.
,ilothing,.p9qld,haYe been done to .save .the burning car and its freight, as .th.ey;were,,.,evidently ,,doomed, to,..destruction from the moment the inflammable matter, in the car was ignited; and no diligence on the part of, the,,.carriers cojilcl, have rescued the property from destruction.; 12 A. 400.
The . happened by ,a eas. fortu.it, an accidental fire, which was unavoidable.-,
]CTq,.fault,,negligence,, carelessness or,mismanagement can be properly attyibuted.-to.the,railroad company. 7 R. 251.
The .Judge-of, the; Court below sustained his judgment by lucid re'asons]'and forthese reasons and those now given by us:
.Ttus .ordered, adjudged and decreed that the judgment of the District Court he and- the same is hereby affirmed, the cqgts of appeal to be paid, by the appellant^'