## The Hettie Ellis.[1]

*(District Court, E. D. Louisiana. March, 1884.)*

DECK- LOAD.

With reference to cargo stowed on deck, the ship is not liable as a common carrier, but its liability in this case is limited to ordinary care, *i. e.*, such degree of care as a prudent owner would exercise If the loss was the result of the negligence, want of skill and care of the master, the liability of the vessel is established. *Lawrence* v. *Minturn*, 17 How. 111, followed.

In Admiralty.

*E. H. Farrar*, for libelants.

*James R. Beckwith*, for claimants.

BILLINGS, J. This is a suit to recover the value of lumber shipped from Tensas river or Bay Minette, Mississippi, to this port. The lumber was, with the knowledge of the libelants, who were owners, stowed on deck. There was a storm, and the preponderance of evidence establishes that the lumber was jettisoned. There was no bill of lading or other contract in writing. The testimony as to usage, with reference to the liability, fails to establish any custom which could vary the liability which the law imposes upon the vessel as to property thus stowed. With reference to cargo stowed on the deck the ship is not liable as a common carrier, but its liability in this case is limited to ordinary care; *i. e.*, such decree of care as a prudent owner would exercise. *Lawrence* v. *Minturn*, 17 How. 111. The case shows the jettison occurred to save the vessel and the mariners from destruction, and leaves the sole question of fact to be decided: Did the unskillfulness of the master expose the vessel and cargo to the danger or peril from which the loss arose? The allegation in the libel is that ' the loss was the result of the negligence, want of skill and care of the master." If this allegation is maintained, the liability of the vessel is established. *Lawrence* v. *Minturn, supra.*

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

In *Shackelford* v. *Wilcox*, 9 La. 33, 39, the court says: "In relation to underwriters without special agreement, and in relation to other owners of the cargo under deck, in case of jettison, it is well settled that goods on deck form no part of the cargo. * * * As between the owner and the carrier, it is otherwise, and the carrier is bound by the same obligation as for the rest of the cargo, save only the damage which may result from its exposed situation."

In *New Jersey Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, 383, the court say "the vessel was not exempt from ordinary care *in the management of the vessel* by the master and hands."

These last two cases establish the law to be that when the cargo is stored on the deck, the burden of proof is on the shipper. Does, then, the evidence establish want of ordinary skill in the management of the vessel? The facts, as detailed by the master and the witness, John Brown, are that the schooner came through Grant's Pass Saturday morning. Towards night a heavy fog came on, with increasing wind. At Round island they took in the mainsail and sailed on before and after dark, the master being uncertain of his whereabouts, or even his direction or course. In the night the vessel went upon Dog keys, where the lumber was jettisoned. It was easy for the schooner to have anchored in closed waters and to have waited until the fog broke, and not to have sailed on without knowledge of locality, and not have attempted to navigate the vessel square bowed in an open sound full of shoals. But for this want of skill or care the loss would not have occurred.

Let there be judgment for the libelant.